## MOTORS INSURANCE CORPORA-TION, Appellant,

### v.

## HOME INDEMNITY COMPANY, Appellee.

### No. 5746.

District of Columbia Court of Appeals.

Argued Aug. 10, 1971.

Decided Nov. 30, 1971.

Colin R. C. Dyer, Washington, D.C., for appellant.

Paul H. Weinstein, Washington, D.C., for appellee.

Before HOOD, Chief Judge, and KERN and PAIR, Associate Judges.

HOOD, Chief Judge:

This case arises out of a collision between automobiles driven by Middleton, an uninsured motorist, and one Crawley, causing property damage and personal injuries to Crawley. Middleton was at fault. Mrs. Crawley was insured with two companies. Motors Insurance Corporation (hereinafter Motors) covered her for property damage due to collision, subject to a $100 deductible provision, and Home Indemnity Company (hereinafter Home) provided coverage for bodily injuries arising out of an accident with an uninsured motorist. Motors paid Crawley for the damage to her vehicle,

creating pursuant to an agreement a right of subrogation to that claim. Subsequently a settlement was effected in which the tort-feasor, Middleton, agreed to pay Motors a sum equivalent to Crawley's property damage claim. Upon final payment Motors gave Middleton a general release, executed on a standard form, purporting to discharge Middleton from "any and all claims * * of any kind or nature whatsoever * * *" arising out of the accident.

Several months later Home paid Crawley $2,000 for her personal injuries and brought suit for that amount against Middleton, asserting its right of subrogation. Middleton pleaded the release from Motors as a bar to Home's claim. Home then amended its complaint to seek alternative relief against Motors for willful and/or negligent interference with Home's subrogation rights.

Citing Bahn, to Use of Farm Bureau Mut. Auto Ins. Co. v. Shalev, D.C.Mun. App., 125 A.2d 678 (1956) and Morris v. Byrd, D.C.Mun.App., 131 A.2d 743 (1957), the trial court found that the general release obtained by Middleton was a good defense to Home's claim. With respect to Home's alternative prayer it was found that Motors, having notice of Home's potential subrogation interest at the time the release was executed, wrongfully interfered with Home's rights against the tort-feasor. From a judgment in favor of Home for $2,000 Motors appeals.

■ The basic question on this appeal is whether the release executed by Motors to the tort-feasor had the effect of releasing the tort-feasor from the personal injury claim by Home, claiming through its insured, Crawley, where the liability of Motors extended only to property damages and Crawley was not a party to the release.

Answering in the negative, we reverse and do not reach appellant's contentions concerning the elements of wrongful interference and the proper measure of damages.

In reaching a contrary result the trial court's analogy to the cases of Bahn and Morris was inappropriate. Those cases involved a tort-feasor who procured a full release from an insured with knowledge that benefits had been paid to the insured. Regarding the tort-feasor's knowledge as decisive, we held that the release was no bar to a later action by the insurer subrogee against the tort-feasor thereby protecting the insurer's equitable right of subrogation. In its Opinion and Order the trial court cited Bahn and Morris for the proposition that had the tort-feasor (Middleton) procured a release from the insured (Crawley) without knowledge of the subrogation interest of an insurer, the release would serve as a bar to the insurer's later action against the tort-feasor. From there the erroneous conclusion was reached that since the tort-feasor obtained a release from the insurer (Motors), rather than from its insured (Crawley), without knowledge of another subrogated claim, the release would likewise be a bar to an action by a second subrogated carrier.

■ The trial court's conclusion does not follow from Bahn and Morris and its reasoning overlooks two principles of subrogation dispositive of this case. Subrogation is a derivative right whereby the carrier succeeds to the right of the insured in relation to the claim or debt for which it is substituted.[1] Secondly, when an insurer pays a sum under a contract of collision insurance subrogation takes place to the extent of the amount of damages paid.[2] Any additional damages that the insured sustained outside the scope of the policy coverage are not subrogated. Accordingly,

1. 16 Couch on Insurance, § 61.36 (2d ed. 1966).

2. Baillio v. Western Cas. & Sur. Co., 189 So.2d 605, 607 (La.App.1966); Phillips v. Alston, 257 N.C. 255, 125 S.E.2d 580, 583 (1962). This right was affirmed by a written agreement between Motors and Crawley entitled Loss or Damage Agreement embodying an express right of subrogation only for "damages to the insured property * * *."

Motors succeeded to the property damage claim and was competent to act only with respect to that claim. It could not contract away claims of any other nature reserved to the insured unless the insured was a party to the contract. No interpretation of *Bahn* and *Morris*, where the release was executed by the insured himself rather than, as here, the insurer claiming under him, compels a contrary result.

Since the admitted facts show that Mrs. Crawley was not a party to the release executed by Motors, she was not bound by it. Therefore, Home, claiming through Crawley to the extent of the personal injury claim, was free to pursue its action against Middleton unimpeded by the release in question. The judgment against Motors is accordingly

Reversed.